UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
DAVID B. STODDARD, )
)
      Petitioner, )
)
           v. )   Civil Action No. 11-10448-NMG
)
GARY RODEN, )
)
      Respondent. )
_____)

REPORT AND RECOMMENDATION ON
PETITION FOR WRIT OF HABEAS CORPUS

April 5, 2012

BOAL, M.J.

On March 16, 2011, David Stoddard ("Stoddard"), who is currently incarcerated in a Massachusetts correctional facility, petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) ("Petition"). (Docket No. 1). The Respondent, Gary Roden, opposes the Petition. (Docket No. 12).

In his Petition, Stoddard argues that he received ineffective assistance of counsel because, without consulting Stoddard, defense counsel promised in his opening statement that Stoddard would testify and then advised Stoddard not to testify after the conclusion of the Commonwealth's case "even though nothing had occurred during the Commonwealth's case to justify retreating from this promise to the jury." Petition, p. 5. For the reasons set forth below, I recommend that the District Judge DENY the Petition.

-1-

I.  FACTUAL AND PROCEDURAL HISTORY

   A.  Trial

On August 7, 2006, a Plymouth County grand jury returned an indictment charging the petitioner with the armed robbery of Mary Lou's News in violation of M.G.L. c. 265, § 17. See Respondent's Supplemental Answer ("RSA"), Ex. A. (Docket No. 9). On February 5, 2007, Stoddard's jury trial commenced before Massachusetts Superior Court Associate Justice Carol S. Ball. Id. Stoddard's counsel made the following statement during his opening argument:

> But, as the judge said, I don't have to give an opening, and I don't have to present any evidence. I do expect Mr. Stoddard to testify, I do Mr. – expect Mr. Stoddard to answer the charges against him. I do expect Mr. Stoddard to tell you what happened or where he was on that particular day, and who he was with.

TR, Vol I, p. 87.[1]

At the conclusion of the first day of trial, the trial judge asked Stoddard's counsel if Stoddard was going to testify. TR, Vol. 1, p. 187. Stoddard's counsel stated he was "leaning towards yes." Id. The next morning, Stoddard's counsel informed the trial judge that he was "leaning toward no" but that he could not "say for certain." TR, Vol. II, p. 5. After the Commonwealth rested, the trial judge asked Stoddard's counsel at a bench conference if Stoddard intended to testify. TR, Vol. II, p. 82-3. After counsel conferred with Stoddard, counsel informed the trial judge that Stoddard would not testify. TR, Vol. II, p. 83. The trial judge then conducted a colloquy with Stoddard outside of the presence of the jury to determine whether his decision not to testify was knowing and voluntary. TR, Vol. II, p. 84. Stoddard told the court that he had discussed the issue with his counsel and stated "I have decided on my own

---

[1] "Tr. __" refers to cites to the trial transcript. See RSA, Ex. U. Citations to the trial transcript will be referenced by volume and page.

that I am not going to testify." TR, Vol. II, p. 86. He declined the offer from the judge of more time to think about the decision. Id. He agreed that his decision was knowing, willing, and voluntary. Id. Stoddard also declined the judge's offer to instruct the jury that Stoddard had an absolute right not to testify because "by saying it, it makes [the jury] think about it" and that "it's better left unsaid." TR, Vol. II, p. 88-89.

The sole issue at trial was the identification of Stoddard as the robber. Commonwealth v. Stoddard, 78 Mass. App. Ct. 1116, 1120. (RSA, Ex. F). Two witnesses that were inside the store during the robbery, Felicia Lindsey and Marisa Lehti, testified that although the robber had the hood up on his sweatshirt and was wearing reflective sunglasses and a baseball cap, they could observe his nose, mouth and chin. TR, Vol. I, p. 101-02, 105, 110, 169-70, 175. Lehti testified that she saw the robber drive away in a gray Subaru station wagon. TR, Vol. I, p. 184. Neither Lindsey or Lehti could identify Stoddard at trial, but both had previously picked his picture out of three separate photographic arrays. TR, Vol. I, p. 101, 164-7.

The Commonwealth also presented the testimony of two other eyewitnesses – Rosemarie Baker and Melissa Rogers. TR, Vol. I, p. 89-90. Baker testified that she was sitting in her car and saw a man go into the store with a gun under his arm. Id. She did not get a look at the man's face. TR, Vol. I, p. 92. Rogers testified that, on the day of the robbery, she was with a "David Stoddard" at his home on Beal Street, where he lived with his brother, Michael Stoddard. TR, Vol. I, p. 115. She accompanied him to Mary Lou's News in his station wagon. TR, Vol. I, p. 116-7. She saw him go inside with a gun under his arm, and then saw him come out and get back into the car. Id. Later he showed her some money and said he had robbed the store. TR, Vol. I, p. 117-8. Although she identified the robber at trial as "David Stoddard," when asked if

that man was in the courtroom, she testified that he was not. TR, Vol. I, p. 115-6, 119-20. Upon further examination, she revealed that she was afraid of "David Stoddard." TR, Vol. I, p. 160.

Two police officers also testified. Id. Detective Steven Sammon was the first detective on the scene. TR, Vol. II, p. 24. He testified that Lehti was later able to pick Stoddard out of a photographic array. TR, Vol. II, p. 21-2. However, another clerk, Emily Gyte (who did not testify at trial), was unable to pick any individual out of the array. TR, Vol. II, p. 23. Sergeant John Wentworth showed arrays to both Lindsey and Lehti, from which they both identified David Stoddard. TR, Vol. II, p. 45, 50. After Lehti picked out David Stoddard, Sergeant Wentworth went to 25 Beal Street in Rockland to look for Stoddard. TR, Vol. II, p. 46. Upon arriving, he saw a silver Subaru station wagon in the driveway. TR, Vol. II, p. 47. Michael Stoddard answered the door and David Stoddard was there as well. TR, Vol. II, p. 47-8. David Stoddard lived in the basement. TR, Vol. II, p. 48. At trial, Sergeant Wentworth identified Stoddard as the David Stoddard he saw at the house on Beal Street. Id.

On February 6, 2007, Stoddard was found guilty of armed robbery. RSA, Ex. A. That same day, the trial judge sentenced the petitioner to a state prison term of a minimum of five years and a maximum seven years on the armed robbery conviction. TR, Vol. II, p. 160.

B.      Stoddard's Appeals

Stoddard appealed his conviction, asserting that (1) his motion for a required finding of not guilty should have been allowed because none of the eyewitnesses to the robbery made an in court identification of him and (2) defense counsel was ineffective because in his opening statement he made an unfulfilled promise that Stoddard would testify and failed to request a limiting instruction relative to a witness' testimony that she was in fear of Stoddard. See RSA,

Ex. C.  On April 18, 2008, the Massachusetts Appeals Court, in an unpublished decision pursuant to Rule 1:28, affirmed Stoddard's conviction.  See RSA, Ex. F, Commonwealth v. Stoddard, 71 Mass. App. Ct. 1120, 885 N.E.2d 172 (2008).  On May 9, 2008, Stoddard filed an application for leave to obtain further appellate review ("ALOFAR") raising both the sufficiency and ineffective assistance of counsel claims.  See RSA, Ex. G and H.  On June 5, 2008, the Massachusetts Supreme Judicial Court ("SJC") denied Stoddard's ALOFAR.  See RSA, Ex. I, Commonwealth v. Stoddard, 451 Mass. 1107, 888 N.E.2d 955 (2008).

On July 28, 2009, Stoddard filed a motion for a new trial in Plymouth Superior Court.  See RSA, Ex. A and Ex. J.  On February 2, 2010, Judge Ball denied Stoddard's motions for a new trial and for post-conviction discovery in furtherance of the motion for new trial.  See RSA, Ex. A and Ex. L.  Stoddard appealed.  See RSA, Ex. A.  On appeal, Stoddard raised the same claims.  See RSA, Ex. N.  On December 28, 2010, the Appeals Court affirmed the order denying the motion for a new trial.  See RSA, Ex. R, Commonwealth v. Stoddard, 78 Mass. App. Ct. 1116, 938 N.E. 2d 909 (2010) (unpublished).  Stoddard filed a second ALOFAR raising his ineffective assistance of counsel claim.  See RSA, Ex. T.  On March 2, 2011, the SJC denied the ALOFAR.  See RSA, Ex. U, Commonwealth v. Stoddard, 459 Mass. 1106, 942 N.E.2d 969 (2011).

On March 16, 2011, Stoddard filed the instant petition.  (Docket No. 1).  On April 19 and 23, 2011, respectively, Respondent filed an answer and supplemental answer.  (Docket Nos. 5 and 9).

II.     DISCUSSION

    A.    Habeas Corpus Standard Of Review

Stoddard may not obtain federal habeas relief under 28 U.S.C. § 2254(d) unless he can show that the Massachusetts Appeals Court's[2] (the "MAC") decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[3] The "unreasonable application" prong is satisfied if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). In reviewing a case under Section 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (quoting Williams, 529 U.S. at 410)) (emphasis in original).

"It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams, 529 U.S. at 391. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that in order to demonstrate ineffective assistance of counsel, a habeas petitioner must show: (1) that counsel's

---

[2] The Supreme Judicial Court denied Stoddard's application for further appellate review and, thus, this Court must "'look through to the last reasoned decision' to determine the basis for the state court's holding." Junta v. Thompson, 615 F.3d 67, 71 (1st Cir. 2010) (quoting Malone v. Clarke, 536 F.3d 54, 63 n. 6 (1st Cir. 2008)). Accordingly, this Court reviews the decision of the Massachusetts Appeals Court. Id.

[3] The AEDPA also allows relief from a state court judgment if that judgment is based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Because a claim of ineffective assistance of counsel involves mixed questions of law and fact, the analysis under Section 2254(d)(2) "is of limited utility." Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002).

performance was deficient, i.e. counsel made errors so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense, i.e. counsel's errors were so serious as to deprive the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984).

To satisfy the first prong of the Strickland test, a defendant must show that trial counsel's performance was deficient to the point of being "objectively unreasonable." See United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993); Companonio v. O'Brien, No. 09-2428, 2012 WL 687979, * 6 (1st Cir. March 5, 2012). Reasonable conduct is conduct that falls "'within the range of competence demanded of attorneys in criminal cases.'" United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978), quoting McMann v. Richardson, 397 U.S. 759, 770-771 (1970). In other words, performance is constitutionally deficient "only if no competent attorney would have acted as [counsel] did." Companonio, 2012 WL 687979 at * 6.

To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." Harrington, 131 S.Ct. at 791-2. "The likelihood of different result must be substantial, not just conceivable." Id. at 792.

In reviewing Stoddard's claim of ineffective assistance of counsel, the MAC cited to Commonwealth v. McMahon, 443 Mass. 409 (2005), and Commonwealth v. Duran, 435 Mass. 97 (2001). In those cases, the SJC applied Strickland, as well as Massachusetts cases that

employed the functional equivalent of Strickland,[4] to an ineffective assistance of counsel claim involving issues similar to the ones raised by Stoddard. Id. Because the MAC applied the correct legal principle, under the AEDPA the issue for this Court is whether the MAC's application of the Strickland standard was unreasonable. Williams, 599 U.S. at 407-8; Harrington, 131 S. Ct. at 785; Tavares, 2007 U.S. Dist. LEXIS 73983 at * 12. "This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785. "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Id. at 788. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Because the Strickland standard is a general one, the range of reasonable applications is substantial. Id. Further, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id. at 785. The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. Id. at 788 (internal quotations and citations omitted).

B.    MAC Decision

The MAC found that the trial judge did not abuse her discretion in denying Stoddard's motion for a new trial because there was "no serious incompetency, inefficiency, or inattention

---

[4] See Commonwealth v. Nardone, 406 Mass. 123 (1989) and Commonwealth v. Saferian, 366 Mass. 89 (1974). See also Ouber, 293 F.3d at 31 n. 8 (Saferian standard is "roughly equivalent" to Strickland standard); Tavares v. O'Brien, No. 04-73983, 2007 U.S. Dist. LEXIS 73983, * 12 n. 3 (D. Mass. March 7, 2007) (Nardone contains applicable federal law because it applies Strickland and Saferian).

on the part of counsel." Commonwealth v. Stoddard, 78 Mass. App. Ct. 1116, 2010 WL 5294016, *2. Although it noted that a failure to present evidence promised in an opening statement may be prejudicial to a defendant's case, the MAC stated that such failure would not automatically amount to ineffective assistance of counsel if the decision to not present the promised testimony was supported by tactical considerations. Id. at *1. The MAC noted that trial counsel had advised Stoddard not to testify after hearing the testimony of Melissa Rogers, Stoddard's companion on the day of the robbery, whose testimony would have been identical to Stoddard's except that "in Rogers' version, the defendant made a stop to rob a convenience store." Id. at *2, n. 1. Further, the trial judge engaged Stoddard in a full colloquy to confirm that the decision not to testify was knowing and voluntary. Id. Accordingly, the MAC found that trial's counsel advice not to testify and Stoddard's subsequent decision not to testify were based upon strategic considerations and that "[w]ithin the context of the facts of this case, counsel's advise (sic) was sound." Id.

The MAC also found that Stoddard's ineffective assistance of counsel claim was "further weakened" by trial counsel's statement that he "expected" Stoddard to testify. Id. The MAC found that this was not an explicit promise, "but rather informed the jury of his expectation that the defendant would testify." Id.

        C.       The MAC's Decision Was Not An Unreasonable Application Of Federal Law

The Supreme Court has not identified circumstances under which an ineffective assistance of counsel claim may be presented on a broken promise in an opening statement. "Because the Supreme Court has yet to adopt more particularized guidelines for ineffective assistance of counsel claims, it is helpful to examine precedents from lower federal courts to

determine how the general [Strickland] standard applies to a particular set of facts." Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002). Although such decisions are not binding on the state court, they are instructive for purposes of determining the proper application of Strickland in factually similar cases. Id.

A promise in an opening statement that a defendant will testify is significant. "When a jury is promised that it will hear the defendant's story from the defendant's own lips, and the defendant then reneges, common sense suggests that the course of trial may be profoundly altered." Ouber, 293 F.3d at 28. The First Circuit has invalidated convictions on the basis that a state court unreasonably applied federal law in determining whether a broken promise in an opening statement constituted ineffective assistance of counsel. See, e.g., Anderson v. Butler, 858 F.2d 16, 19 (1st Cir. 1988); Ouber, 293 F.3d at 35.

In Ouber, the First Circuit found that the state court unreasonably applied the Strickland standard. In that case, defense counsel promised the jury "over and over" that defendant would testify. He then decided not to call the defendant after making her testimony the centerpiece of the defense. He had called 24 character witnesses who testified to the defendant's reputation for truthfulness. The defense attorney "acted as if he had no doubt about whether his client should testify." Ouber, 293 F.3d at 28. In Anderson, defense counsel made a "dramatic" promise the he would present the jury with the "strikingly significant" testimony of a psychiatrist and psychologist that would show that defendant's state of mind was insufficient for a first degree murder charge because the defendant "was like a robot programmed on destruction." Anderson, 858 F.2d at 17. Defense counsel then failed to call these witnesses, but continued to press the defendant's state of mind as a defense. Id.

The factors present in Ouber and Anderson are not present here. Trial counsel's promise that he "expected" Stoddard to testify is not the type of specific promise that the First Circuit and courts in this district have found necessary to invalidate a conviction. "[O]ur cases that premise a habeas writ on an unfulfilled promise during an opening argument generally require greater specificity in the promise and greater contemporaneousness between the promise and the jury deliberations." Phoenix v. Matesanz, 233 F.3d 77, 85 (1st Cir. 2000); see also Tavares, 2007 U.S. Dist. LEXIS 73983 at * 18 (state court's determination not unreasonable in case involving general promise in opening statement to call alibi witnesses); Yancey v. Hall, 237 F. Supp. 2d 128, 135 (D. Mass. 2002) (state court's determination was not unreasonable where defense counsel made a "fleeting and isolated" promise that defendant would testify). Unlike Ouber and Anderson, Stoddard's testimony was not the centerpiece of his defense. Trial counsel devoted much of his defense to the identification, or lack thereof, of Stoddard as the robber. See Yancey, 237 F. Supp. 2d at 135 (state court's determination was not unreasonable where counsel presented an alternate defense for which the promised testimony of defendant was not essential); Phoenix, 233 F.3d at 85 (finding promise to provide certain evidence was insufficient for habeas writ because it was "neither 'dramatic' nor was the indicated testimony 'strikingly significant.'"). Finally, unlike Ouber, the trial judge engaged in a comprehensive colloquy with Stoddard, who made clear that the decision not to testify was his own decision.

Even assuming, arguendo, that counsel's actions were unreasonable, Stoddard would still have to show that he was prejudiced by this error, i.e. that there is a strong possibility that counsel's error affected the outcome of trial. Ouber, 293 F.3d at 33 (holding that a court may not presume prejudice as a result of counsel's failure to produce a promised witness). Here, as the

MAC noted, counsel never explicitly promised that Stoddard would testify. Moreover, several witnesses, including Stoddard's companion on the day of the robbery, identified Stoddard as the robber. Accordingly, the MAC's decision was not an unreasonable application of federal law.

III. RECOMMENDATION

For the foregoing reasons, I recommend that the Court DENY Petitioner David Stoddard's Petition for Writ of Habeas Corpus.

IV. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge